UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HELEN MURO,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social<br>Security,<br><br>　　　　　Defendant. | Case No. EDCV 07-1169 JC<br><br>MEMORANDUM OPINION |

**I.   SUMMARY**

On September 26, 2007, plaintiff Helen Muro ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits. The parties have filed a consent to proceed before a United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion"). The Court has taken both motions under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; September 28, 2007 Case Management Order, ¶ 5.

///

Based on the record as a whole and the applicable law, the decision of the Commissioner is AFFIRMED. The findings of the Administrative Law Judge ("ALJ") are supported by substantial evidence and are free from material error.[1]

## II. BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

In July 2004, plaintiff filed an application for Supplemental Security Income benefits. (Administrative Record ("AR") 12, 24, 60). Plaintiff asserted that she became disabled on August 9, 2003, due to spinal disease and diverticulitis. (AR 63-64). The ALJ examined the medical record and, on January 19, 2007, heard testimony from plaintiff (who was represented by counsel), a medical expert, and a vocational expert. (AR 164-206).

On April 20, 2007, the ALJ determined that plaintiff was not disabled through the date of the decision. (AR 12-16). Specifically, the ALJ found: (1) plaintiff suffered from the following severe impairments: degenerative disc disease of the lumbar spine and obesity (AR 13); (2) plaintiff's impairments, considered singly or in combination, did not meet or medically equal one of the listed impairments (AR 14-15); (3) plaintiff retained the residual functional capacity to perform a wide range of light work[2] (AR 14, 16); (4) plaintiff could perform her past relevant work (AR 15-16); (5) plaintiff could perform other work that exists in significant numbers in the national economy, specifically a cashier

---

[1] The harmless error rule applies to the review of administrative decisions regarding disability. See Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1196 (9th Cir. 2004) (applying harmless error standard); see also Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1054-56 (9th Cir. 2006) (discussing contours of application of harmless error standard in social security cases).

[2] Specifically, the ALJ determined that plaintiff: (i) could lift 20 pounds occasionally and 10 pounds frequently; (ii) could stand and/or walk up to six hours in an eight-hour workday; (iii) could sit up to eight hours in an eight-hour workday; (iv) required the option to change from sitting to standing, or standing to sitting, for one to three minutes at the end of every hour; (v) could occasionally bend, stoop, crouch, crawl, balance, and squat; and (vi) could perform simple, routine, and detailed work. (AR 14).

(AR 15); and (6) plaintiff's statements regarding her extreme limitations were less than credible. (AR 15).

The Appeals Council denied plaintiff's application for review. (AR 5-7).

### III. APPLICABLE LEGAL STANDARDS

#### A. Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that she is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work she previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

(2) Is the claimant's alleged impairment sufficiently severe to limit her ability to work? If not, the claimant is not disabled. If so, proceed to step three.

(3) Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four.

///
///
///

(4) Does the claimant possess the residual functional capacity to perform her past relevant work?[3] If so, the claimant is not disabled. If not, proceed to step five.

(5) Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett); see also Burch, 400 F.3d at 679 (claimant carries initial burden of proving disability).

**B. Standard of Review**

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error. Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted). It is more than a mere scintilla but less than a preponderance. Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and

---

[3]Residual functional capacity is "what [one] can still do despite [one's] limitations" and represents an "assessment based upon all of the relevant evidence." 20 C.F.R. § 416.945(a).

4

evidence that detracts from the [Commissioner's] conclusion.'" Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming or reversing the ALJ's conclusion, a court may not substitute its judgment for that of the ALJ.  Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

## IV.   DISCUSSION

### A.   The ALJ's Rejection of the Treating Physician's Opinion Is Supported by Substantial Evidence and Is Free from Material Error

Plaintiff contends that the ALJ failed properly to consider the opinion of treating physician, Dr. Edward Keiderling.  (Plaintiff's Motion at 4).  This Court disagrees and finds that the ALJ properly considered Dr. Keiderling's opinion and gave legally sufficient reasons for rejecting such opinion.

#### 1.   Applicable Law

In Social Security cases, courts employ a hierarchy of deference to medical opinions depending on the nature of the services provided.  Courts distinguish among the opinions of three types of physicians:  those who treat the claimant ("treating physicians") and two categories of "nontreating physicians," namely those who examine but do not treat the claimant ("examining physicians") and those who neither examine nor treat the claimant ("nonexamining physicians"). Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995), as amended (1996) (footnote reference omitted).  A treating physician's opinion is entitled to more weight than an examining physician's opinion, and an examining physician's opinion is entitled to more weight than a nonexamining physician's opinion.[4]  See id.  In general, the opinion of a treating physician is entitled to greater weight than that of

---

[4] Cf. Le v. Astrue, 529 F.3d 1200, 1201-02 (9th Cir. 2008) (not necessary or practical to draw bright line distinguishing treating physicians from nontreating physicians; relationship is better viewed as series of points on a continuum reflecting the duration of the treatment relationship and frequency and nature of the contact) (citation omitted).

a nontreating physician because the treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." Morgan v. Commissioner of Social Security Administration, 169 F.3d 595, 600 (9th Cir. 1999) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir.1987)).

The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Rodriguez v. Bowen, 876 F.2d 759, 761-62 & n. 7 (9th Cir. 1989)). Where a treating physician's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (citation and internal quotations omitted). The ALJ can reject the opinion of a treating physician in favor of a conflicting opinion of another examining physician if the ALJ makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record. Id. (citation and internal quotations omitted); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (ALJ can meet burden by setting out detailed and thorough summary of facts and conflicting clinical evidence, stating his interpretation thereof, and making findings) (citations and quotations omitted); Magallanes, 881 F.2d at 751, 755 (same; ALJ need not recite "magic words" to reject a treating physician opinion -- court may draw specific and legitimate inferences from ALJ's opinion). "The ALJ must do more than offer his conclusions." Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988). "He must set forth his own interpretations and explain why they, rather than the [physician's], are correct." Id. "Broad and vague" reasons for rejecting the treating physician's opinion do not suffice. McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989).

      **2.**     **Relevant Facts**

Plaintiff began receiving treatment for lower back pain in April 2003. (AR 121).

From April 2003 through February 2004, Dr. Harry Webb at Colton Valley Medical Group treated plaintiff. (AR 101-21). Dr. Webb observed decreased range of motion in the lumbar spine and diagnosed lumbar spine disc disease. (AR 101, 103, 110-16). Dr. Webb prescribed Motrin and muscle relaxants (*i.e.*, Robaxin, Flexeril) for plaintiff's back pain. (AR 101, 104, 111). He opined that plaintiff could resume her regular or customary work by approximately April 16, 2004. (AR 102).

In July 2003, plaintiff also received treatment at Molina Medical Center. (AR 90-97). The physicians at the Molina Medical Center noted some tenderness in the lumbar area but no sensory loss was evident.[5] (AR 90-91, 94-97). They recommended stretch exercises and physical therapy to strengthen plaintiff's back and prescribed Motrin. (AR 91, 94-97).

From August 2004 through March 2005, Dr. Edward Keiderling at Arrowhead Regional Medical Center treated plaintiff. (AR 136-60). On August 24, 2004, Dr. Keiderling completed an Attending Physician's Statement in support of plaintiff's claim for employee disability benefits. (AR 159-60). Dr. Keiderling reported that plaintiff had osteoarthritis of the lumbosacral spine and opined that she would "never" be able to resume her "regular and customary work." (AR 159-60). He further noted that plaintiff was being treated with physical therapy and "medicines." (AR 160). When asked to identify the "[o]bjective [f]indings (including results of current x-rays, EKG's, or any other special tests)" that supported his diagnosis, Dr. Keiderling wrote: "Not available to me." (AR 159).

Dr. Keiderling referred plaintiff to Dr. Andrew Song for x-rays and an MRI of the lower back on October 18, 2004 and March, 2, 2005, respectively. (AR 137, 139). The x-rays reflected a moderate narrowing of the L3-4, L4-5, and L5-S1 disc spaces, but no compression fracture deformities were seen. (AR 139). Dr.

---

[5] Plaintiff received eight sessions of treatment at the Molina Medical Center in July 2003. On several of those occasions, the physicians observed that there was no tenderness in the lumber area. (AR 91, 95, 96).

Song noted that there was an acute angle of the lower sacrum and coccyx that "may present an old fracture deformity." (AR 139). The MRI showed (1) a mild congenital spinal stenosis mostly from L3 down to S1 with a thecal sac AP diameter measuring up to 8.5mm, (2) a mild marginal osteophyte formation at L4-5 mildly narrowing the right neural foramen, and (3) multilevel facet disease and degenerative facet disease. (AR 137). On March 22, 2005, Dr. Keiderling observed that plaintiff had a reduced range of back motion with positive straight leg raising bilaterally. (AR 136). He prescribed Tylenol and substituted Desyrel for Flexeril. (AR 136).

At the administrative hearing, Dr. Sami Nafoosi, a medical expert, testified as follows: He reviewed all of the evidence in the record. (AR 185). Plaintiff suffered from degenerative disc disease of the lumbar spine and obesity.[6] (AR 186-87). Plaintiff: (1) could lift 20 pounds occasionally and 10 pounds frequently; (2) could stand or walk for six hours in an eight-hour workday; (3) could sit for eight hours in an eight-hour workday; (4) would require the option to change from sitting to standing, or standing to sitting, for one to three minutes at the end of every hour; and (5) could occasionally bend, stoop, crouch, crawl, balance, and squat. (AR 188-90). The ALJ adopted Dr. Nafoosi's opinion and concluded that plaintiff was able to perform her past relevant work. (AR 14-16).

### 3. Analysis

The ALJ rejected Dr. Keiderling's assessment in favor of Dr. Nafoosi's assessment, reasoning as follows:

> In August 2004 the [plaintiff's] physician stated that the [plaintiff] would "never" be able to return to work. (Exhibit 6F/26) [AR 160]. I completely reject that conclusion because it is contrary to the physician's own objective findings and inconsistent with the

---

[6]Dr. Nafoosi expressly identified the October 2004 x-rays to support the diagnosis of degenerative disc disease of the lumbar spine. (AR 186-87).

> objective medical signs and findings of record as a whole. The physician set forth no rationale for his statement, and the [plaintiff] was provided only routine and conservative care, inconsistent with a patient who had a disabling impairment. Even treating physicians must provide objective substantiation for their conclusions. (20 CFR 416.927(d)). Unsupported conclusions of a treating physician are not entitled to deference under the law.
>
> . . . There was moderate narrowing of lumbar disc spaces, but no compression fractures or evidence of nerve root encroachment. (Exhibit 6F/5) [AR 139]. The final diagnosis was multilevel degenerative disease. (Exhibit 6F/3) [AR 137]. The [plaintiff's] physicians continued to pursue routine treatment with medications. They did not recommend surgery, nerve injections, or other modes of treatment commonly associated with a disabling back impairment. (Exhibit 6F/1-3) [AR 135-37].

(AR 14). These are specific and legitimate reasons supported by the record for rejecting Dr. Keiderling's August opinion. See Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1195 (9th Cir. 2004) ("[A]n ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole . . . or by objective medical findings[.]"); Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003) (treating physician's opinion properly rejected where treating physician's treatment notes "provide no basis for the functional restrictions he opined should be imposed on [the claimant]"); Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996) (variance between physician's opinion and his own treatment notes may be used to deem opinion untrustworthy). Specifically, Dr. Keiderling could not identify any objective findings in support of his assessment and simply noted that such findings were "[n]ot available" to him. Moreover, Dr. Keiderling prescribed only conservative treatment such as physical

therapy, muscle relaxants (*i.e.*, Flexeril), and pain relievers (*i.e.*, Tylenol).  The ALJ's conclusion that the foregoing was inconsistent with Dr. Keiderling's opinion that plaintiff could never return to work is supported by the record, is a rational conclusion, and is entitled to deference.

Plaintiff contends that the October 2004 x-rays and the March 2005 MRI support Dr. Keiderling's August 2004 opinion.  (Plaintiff's Motion at 4).  However, these findings were made after Dr. Keiderling provided his August 2004 opinion, and thus could not have been the basis of his opinion.  Moreover, the x-rays (showing moderate narrowing of the L3-4, L4-5, and L5-S1 disc spaces without compression fracture deformities) and the MRI (showing mild congenital spinal stenosis mostly from L3 down to S1, mild marginal osteophyte formation at L4-5 mildly narrowing the right neural foramen, and multilevel facet disease and degenerative facet disease) do not support Dr. Keiderling's August 2004 opinion that plaintiff could *never* work.  Indeed, as noted above, Dr. Nafoosi reviewed all of the medical records, including the x-rays and the MRI, and opined that plaintiff could perform a wide range of light work.[7]

Accordingly, the ALJ's rejection of the unsupported opinion of Dr. Kiederling is supported by substantial evidence and is free from material error.

### B. Neither Reversal Nor Remand Are Appropriate Based upon the ALJ's Alleged Failure Fully and Fairly to Develop the Record

Plaintiff argues that if the ALJ required qualification of Dr. Keiderling's opinion, he should have contacted the physician.  (Plaintiff's Motion at 3).  For the reasons discussed below, this Court disagrees.

///
///

---

[7]On January 26, 2005, consulting physician, Dr. Stuart Brodsky, who also had the benefit of reviewing the x-rays and MRI, opined that plaintiff could perform medium work.  (AR 125-34).  As Dr. Brodsky did not appear to give significant consideration to plaintiff's obesity, the ALJ adopted the more restrictive residual functional assessment of Dr. Nafoosi.  (AR 13-14).

### 1. Applicable Law

An ALJ has an affirmative duty to assist the claimant in developing the record at every step of the sequential evaluation process. Bustamante, 262 F.3d at 954; see also Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) (ALJ has special duty fully and fairly to develop record and to assure that claimant's interests are considered). The ALJ's duty to develop the record is triggered "when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001) (citation omitted).

### 2. Analysis

In this case, the ALJ's duty to develop the record further was not triggered. The ALJ's finding that Dr. Keiderling failed to provide any support for his opinion did not suggest that the record was ambiguous or inadequate. First, there was sufficient evidence in the record to allow for a proper evaluation of plaintiff's physical limitations. Indeed, the ALJ sought the assistance of a medical expert, Dr. Nafoosi, to review the medical records and to provide an assessment of plaintiff's limitations. Furthermore, the ALJ kept the record open for more than two weeks after the hearing so that plaintiff could submit any additional evidence or argument to support her claim that her back condition was disabling. (AR 203-05). Plaintiff, however, did not provide any additional information. This was sufficient to satisfy the ALJ's duty fully and fairly to develop the record. See Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir 1998) (the ALJ satisfied his duty fully and fairly to develop the record by keeping the record open after the hearing to allow supplementation of the record); see also Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996) (the ALJ may discharge his duty fully and fairly to develop the record in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, and continuing the hearing to augment the record).

1      Accordingly, the ALJ was not required further to develop the record by
2 contacting Dr. Keiderling.

3      **C.   The ALJ's Assessment of Plaintiff's Credibility Is Supported by**
4           **Substantial Evidence and Is Free from Material Error**

5      Plaintiff alleges that the ALJ failed to make proper credibility findings.
6 (Plaintiff's Motion at 4-5).  This Court disagrees.

7           **1.   Applicable Law**

8      An ALJ is not required to believe every allegation of disabling pain or other
9 non-exertional impairment.  Orn, 495 F.3d at 635 (citing Fair v. Bowen, 885 F.2d
10 597, 603 (9th Cir. 1989)).  If the record establishes the existence of a medically
11 determinable impairment that could reasonably give rise to symptoms assertedly
12 suffered by a claimant, an ALJ must make a finding as to the credibility of the
13 claimant's statements about the symptoms and their functional effect.  Robbins,
14 466 F.3d 880 at 883 (citations omitted); Moisa v. Barnhart, 367 F.3d 882, 885 (9th
15 Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc); see
16 also 20 C.F.R. § 416.929(a) (explaining how pain and other symptoms are
17 evaluated).

18      To reject a claimant's testimony regarding pain and other subjective
19 symptoms as not credible, an ALJ is minimally required to make "specific, cogent"
20 findings, supported in the record, to justify the ALJ's determination.  See Robbins,
21 466 F.3d at 883; Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006); Holohan
22 v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001) (the ALJ must "specifically
23 identify the testimony [the ALJ] finds not to be credible and must explain what
24 evidence undermines the testimony").  Unless an ALJ makes a finding of
25 malingering based on affirmative evidence thereof, the ALJ may reject a
26 claimant's testimony regarding the severity of symptoms only if the ALJ makes
27 specific findings stating clear and convincing reasons for doing so.  Robbins, 466
28 F.3d at 883; Moisa, 367 F.3d at 885; Connett, 340 F.3d at 873.

The ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa, 367 F.3d at 885.  To find the claimant not credible, an ALJ must rely on (1) reasons unrelated to the subjective testimony (*e.g.*, reputation for dishonesty); (2) internal contradictions in the testimony; or (3) conflicts between the claimant's testimony and the claimant's conduct (*e.g.*, engaging in daily activities inconsistent with the alleged symptoms; maintaining work inconsistent with the alleged symptoms; failing, without adequate explanation, to take medication, to seek treatment, or to follow prescribed course of treatment).  Lingenfelter v. Astrue, 504 F.3d 1028, 1040 (9th Cir. 2007); Orn, 495 F.3d at 636; Robbins, 466 F.3d at 883; Burch, 400 F.3d at 680-81; Thomas, 278 F.3d at 950; SSR 96-7p. Although an ALJ may not disregard such claimant's testimony solely because it is not substantiated affirmatively by objective medical evidence, the lack of medical evidence is a factor that the ALJ can consider in the ALJ's credibility assessment. Burch, 400 F.3d at 681 (citations omitted).

Questions of credibility and resolutions of conflicts in the testimony are functions solely of the Commissioner.  Greger, 464 F.3d at 972.  If the ALJ's interpretation of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" it.  Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

    **2.**  **Relevant Facts**

On April 7, 2005, R. La Faurie completed a Field Office Disability Report after a face-to-face interview with plaintiff.  (AR 79-81).  Faurie observed that plaintiff had no difficulty walking, standing, sitting, concentrating, hearing, reading, understanding, speaking coherently, talking, or answering.  (AR 80).

On May 27, 2005, plaintiff completed a Disability Report, wherein she reported that she was "at times unable to get out of bed and get [her] meds [sic] or

prepare food . . . ." (AR 82-88). She further noted that she was "unable to care for [her]self" and that her daughter helped her with her daily functions. (AR 82).

At the January 19, 2007 disability hearing, plaintiff testified as follows: She had pain in her lower back, which radiated to her buttocks and knees. (AR 171-72). Her back pain greatly limited her daily activities. She was frequently bedridden due to the pain. (AR 171-73). There were times when taking a bath was difficult. (AR 171). She left her house only two or three times a month, did not go grocery shopping, and did not do any household chores. (AR 173, 181). However, she was able to care for her personal needs (*i.e.*, dressing, bathing) "most of the time."[8] (AR 181). She was able to sit for about one and a half hours before having to lay down "for the rest of the day or for a couple of hours," walk for about a block before having to lay down, and lift about three pounds. (AR 172-73, 182). She had difficulty concentrating because of the pain and side effects from her medication. (AR 189).

At the close of the hearing, the ALJ raised concerns about the lack of medical evidence to support plaintiff's allegation that she suffered from radiculopathy going on along down into her hip and right leg. (202-04). The ALJ decided to keep the record open to permit plaintiff to submit additional evidence and/or argument in support of her position. (AR 204-05). Thereafter, the following colloquy ensued:

[Plaintiff]:   Thank you for listening.
ALJ:           I appreciate that. And the -- I'd say your honesty about this case. So, I find you a credible witness.
[Plaintiff]:   Thank you.
ALJ:           But the problem is that --
[Plaintiff]:   There's no --

---

[8]Plaintiff testified that her daughter did the grocery shopping and household chores, helped plaintiff at times with her personal care, and drove for plaintiff . (AR 173, 181-82).

14

|  |  |  |
|---|---|---|
| 1 | ALJ: | -- you need a little more -- MRI doesn't come in with any |
| 2 | | strong evidence to -- [¶] -- confirm it [the alleged |
| 3 | | radiculopathy]. . . . |

(AR 205).

### 3. Analysis

The ALJ discounted plaintiff's subjective allegations, stating as follows:

> I have considered [plaintiff's] statements, regarding her extreme limitations, and I find them to be less than credible. [Plaintiff] stated that her pain was so bad that she was sometimes unable to get out of bed, and that she needed assistance bathing and caring for herself. (Exhibit 6E/1 and 6E/5) [AR 82-86]. She stated at the hearing that she had great difficulty in concentrating. But, when she was observed by field office personnel during an interview, she had no such concentration difficulties. She had no difficulties sitting, standing, walking, or any other apparent limitations due to pain. (Exhibit 5E/2) [AR 80]. Her physicians provided only routine care, uncharacteristic of the treatment which would be expected for a person with disabling pain and other symptoms. Her claims are inconsistent with the record under SSR 96-7p, and her symptoms appear exaggerated.

(AR 15). Here, the ALJ stated clear and convincing reasons for discounting plaintiff's testimony. Specifically, the ALJ properly noted that plaintiff's allegations of disabling pain and difficulty concentrating were inconsistent with her conduct during the interview with Faurie. See Lingenfelter, 504 F.3d at 1040; see also SSR 96-7p (the ALJ may consider observations made by Social Security Administration employees in evaluating the claimant's credibility). The ALJ also properly considered the inconsistency between plaintiff's statements and her routine medical treatment. See Parra v. Astrue, 481 F.3d 742, 750-51 (9th Cir.

1  2007) (the ALJ may discount the claimant's testimony based on conservative
2  treatment), cert. denied, 128 S. Ct. 1068 (2008).[9]
3      Plaintiff contends that a remand is necessary because the ALJ's decision to
4  discount plaintiff's allegations is directly inconsistent with his own comment at
5  the hearing that plaintiff was a "credible witness." (Plaintiff's Motion at 5). This
6  argument is unavailing. Although the ALJ may well have initially viewed plaintiff
7  as credible at the hearing, he clearly revised that opinion by the time he generated
8  the final written decision which is before this Court for review.[10] As noted above,
9  questions of credibility are functions solely of the Commissioner. As the ALJ's
10 assessment of plaintiff's credibility is reasonable and is supported by substantial
11 evidence, this Court will not second-guess it.

## V. CONCLUSION

For the foregoing reasons, the decision of the Commissioner of Social Security is affirmed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED:  November 28, 2008

                                            /s/
                              Honorable Jacqueline Chooljian
                              UNITED STATES MAGISTRATE JUDGE

---

[9] The Court acknowledges plaintiff's expressed financial difficulties in affording additional treatment. (AR 170, 176, 191-92). However, plaintiff points to no medical evidence in the record which suggests that her physicians' conservative treatment course was predicated upon plaintiff's inability to afford other treatment as opposed to the physicians' professional assessment that the conservative treatment prescribed was appropriate.

[10] Moreover, the ALJ's oral assessment of plaintiff's credibility at the hearing was in the context of essentially advising plaintiff that the record was bereft of medical evidence to support plaintiff's assertion that she suffered from radiculopathy, and that absent such evidence the ALJ could not so find. (AR 202-05).